## Rader v. Deshler

*Thomas V. Casale,* for plaintiffs.
*Richard E. Deetz,* for defendants.

MILLER, *J.,* January 26, 1996—Plaintiffs Jack Rader and Marjorie Rader, the developers of The Woods at Mountain Springs Lake, are seeking an injunction to

force defendants Keith Deshler and Nettie Deshler, owners of lot 202, to comply with restrictions contained in their deed and similar deeds to all of the properties in The Woods. Plaintiffs' complaint alleges that defendants violated these covenants when they stored two trailers on their property, placed a "for sale" sign in the window of their home and altered their garage without the plaintiffs' permission.

Plaintiffs filed this motion for injunctive relief on November 21, 1995. Both parties filed briefs on the matter, and on December 18, 1995, this court heard testimony from the parties.

The instant dispute concerns several restrictive covenants contained in the deeds of The Woods. All of' the lots in The Woods development are subject to protective covenants and conditions recorded in the Monroe County Recorder of Deeds Office at deed book volume 1956, page 970. The lots are also subject to builder policies and procedures and architectural standards and requirements which are recorded in the Monroe County Recorder of Deeds Office at deed book volume 1956, page 973 and page 975. Prior to purchase, the defendants signed an acknowledgement indicating that they had reviewed the covenants, policies, and standards.

It is well-established that restrictive covenants, although not favored by the law, are legally enforceable. *Gey v. Beck,* 390 Pa. Super. 317, 568 A.2d 672 (1990); *Jones v. Park Lane for Convalescents,* 384 Pa. 268, 120 A.2d 535 (1956). An effective restrictive covenant must be "express and plainly stated" because it will be strictly construed against the party seeking enforcement. *Id.* at 272, 120 A.2d at 538.

Paragraph 7 of the covenants provides in pertinent part as follows:

"No building or structure or landscaping plan shall be erected or constructed upon the premises without

first obtaining the approval, in writing, of the grantors, their heirs, successors or assigns, as to the location, elevation, plan and design. *All dwellings shall have an attached garage with sufficient interior space for a minimum of one and one-half standard size motor vehicles.* The grantors may refuse to approve said plan based purely on aesthetic ground." (emphasis added)

Defendants originally had plans to attach three garages to the house on lot 202. During the course of construction, the defendants submitted a revised plan providing for two attached garages, which the defendants approved. Eventually, without the defendants' approval, plaintiffs closed in one of the garages to expand the recreation room inside the home. Mr. Deshler testified at the hearing that the remaining garage can hold two cars. There was a great deal of ambiguity surrounding the definition of a "one and one-half car garage." Mr. Rader and his son, who are both involved in the approval of construction plans at The Woods, gave conflicting definitions. Our impression is that the plaintiffs' definitions of a "one and one-half car garage" are vague and arbitrary. Strictly construing the covenant against the plaintiffs, as we must, we find that the interpretation and enforcement of the covenant is not plainly stated, and injunctive relief is not proper.

Next, plaintiffs ask us to order the defendants to remove a boat trailer they had on their property. Paragraph 5 of the covenants provides:

"No trailer, tent, barn, outbuilding, shack, tree house or other detached building or structure shall be erected or permitted to remain on the premises or used for dwelling purposes. No basement or garage shall at any time be used as a residence either temporarily or permanently and no house shall be occupied prior to completion except with the prior consent of the grantors, their heirs, assigns and successors."

The issue is whether the covenant restricts the use of all types of trailers, or whether, as the defendants argue, the restriction is limited to the use of residential-type trailers.

The maxim "noscitur a sociis" mandates that "the meaning of words may be indicated or controlled by those words with which they are associated. Words are known by the company they keep." *Northway Village No. 3 Inc. v. Northway Properties Inc.,* 430 Pa. 499, 505-506, 244 A.2d 47, 50 (1968). Although the maxim is primarily used as an aid to statutory construction, it has also been used in determining the meaning of words in private contracts such as leases. *Id.* In these covenants, the word "trailer" is associated with "tent, barn, outbuilding, tree house, or other detached building or structure." All of the other listed types clearly restrict the use of residential structures, which indicates to us that the type of forbidden trailer is residential, such as a mobile home. When considered in the context of the paragraph as a whole, we find that the restriction is limited to residential-type trailers. Therefore, trailers that are not residential, such as the defendants' boat trailer, are not restricted by the covenant.

The plaintiffs' third allegation is that defendants displayed a "for sale" sign in their window without plaintiffs' permission. Since plaintiffs presented no evidence to support this allegation, we deem it without merit.

Finally, we turn to the original question of whether a permanent injunction is an appropriate remedy in this situation. A remedy in the form of an injunction is extraordinary and ought not to be sought except for the prevention of great mischief. *Rick v. Cramp,* 357 Pa. 83, 53 A.2d 84 (1947). "An injunction will issue only when the rights of the plaintiff are clear, there is an urgent necessity to avoid injury which cannot

be compensated for by damages, and greater injury will be done by refusing it than by granting it." *Christoffel v. Shaler Area School District,* 60 Pa. Commw. 17, 19-20, 430 A.2d 726, 728 (1981), citing *Berman v. Philadelphia,* 425 Pa. 13, 228 A.2d 189 (1967). Applying this standard to the evidence presented and discussed above, we do not find the facts shown meet the requirements for such extraordinary relief.

Defendants' new matter asked the court to award attorney's fees, claiming plaintiffs brought this suit arbitrarily, frivolously, vexatiously and in bad faith. Although we will not grant the request for injunctive relief, we do not find the circumstances in this case to rise to the level of egregious conduct required to award attorney's fees. For the foregoing reasons, we enter the following order.

## ORDER

And now January 26, 1996, plaintiffs' motion for a permanent injunction is denied.

Defendants' request for attorney's fees is denied.